NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**RYAN W. BOUNDS, OSB #000129**
Assistant United States Attorney
Ryan.Bounds@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:22-cr-0183-IM** |
| **v.** | **GOVERNMENT'S MOTION FOR REVOCATION OF DEFENDANT'S PRETRIAL RELEASE AND MEMORANDUM IN SUPPORT** |
| **ALFRED E. NEVIS,** | |
| **Defendant.** | |

The United States of America respectfully moves this Court pursuant to 18 U.S.C. § 3148(b) for an order revoking defendant's pretrial release and directing that defendant be detained pending the resolution of this case. This motion is predicated on "probable cause to believe" that defendant has committed multiple felonies "while on release." *Id.* § 3148(b)(1)(A).

## I. BACKGROUND

A federal grand jury returned an indictment charging defendant with Aggravated Identity Theft, Wire Fraud, and Transaction Money Laundering, in violation of 18 U.S.C. §§ 1028A, 1343, and 1957, on May 17, 2022. (ECF #1.) Specifically, the grand jury charged that

defendant "used the names and other means of identification of other individuals who were then known to him—including current and former employees, business associates, and their spouses—without lawful authority for the purposes of registering straw corporations, procuring Employer Identification Numbers ("EINs") for those corporations, and applying to the [Small Business Administration] on behalf of those corporations for [Economic Injury Disaster Loans ("EIDLs")] and advances." (*Id.* at 3.) According to the Indictment, defendant used false identities and bogus borrower information to procure at least twelve EIDLs and advances, totaling more than $1.3 million.

Defendant was arrested and then arraigned on the Indictment on May 26, 2022. (ECF #6.) Judge Russo ordered defendant released from custody on the same date, but she imposed several conditions. (ECF #8.) Among those conditions were that defendant "not commit any offense in violation of federal, state or local law while on release" (condition #1) and "not have direct or indirect contact with . . . victims as identified by the U.S. Attorney's Office" (condition #7). (*Id.*)

After receiving reports that defendant violated both of those conditions within a week of his release, the government forwarded those reports to defendant's supervising U.S. Pretrial Services ("USPTS") officer. The officer submitted a report of violation to the Court on June 27, 2022, and recommended that defendant be summoned to appear to answer to the allegations. Defendant made his initial appearance on the summons three days later. (ECF #15.) The matter was continued, and the Court held an evidentiary hearing on July 7, 2022. (ECF #22.) USPTS recommended that, if the Court were to find that the alleged violations had indeed occurred, defendant's release should be revoked on grounds that he presented both a risk of danger to the

community and of nonappearance. (July 7, 2022, Letter from Sr. USPTS Officer Angela Peru to Hon. Jeffrey J. Armistead.)

At the hearing, the Court heard witness testimony from one witness for the government, Treasury Inspector General for Tax Administration Special Agent Andrew Smith, and two witnesses for defendant: defendant himself and one of his alleged identity-theft victims (hereinafter "Victim-1"). (ECF #23 [hereinafter "Evid. Hr'g Tr."].)

## II. Testimony at the Evidentiary Hearing

Special Agent Smith's uncontroverted testimony established that defendant had, less than a week after his release, repeatedly contacted one of his identity-theft victims and falsely made or forged a check for $50,000 to his defense counsel, misusing the identity of yet another such victim.

Specifically, Agent Smith testified that, on June 1, 2022, an identity-theft victim in this case who shall be referred to herein as "Victim-2" contacted Agent Smith to report that defendant had contacted him "via internet-based calling applications." (*Id.* at 18.) Victim-2 disclosed to Agent Smith that defendant had unsuccessfully called Victim-2, twice, when it was "around 1:30 in the morning on May 31st" in Ireland, where Victim-2 was then living. (*Id.* at 34.) This report was corroborated by screenshots from defendant's cellular phone (ECF #21-2) and defendant's own admission that he had called Victim-2 twice by the Facebook Messenger app—but only inadvertently, while trying to capture screenshots of their previous communications. (*Id.* at 55.)

The bulk of Agent Smith's testimony related to the forged check, an image of which was admitted without objection as Government's Exhibit 1. (*Id.* at 21.) An individual who shall be

referred to herein as "Victim-3" transmitted the image of the negotiated check to Agent Smith "on or around June 9, 2022." (*Id.* at 19.) Victim-3 reported that the check had been drawn on and negotiated through an account held in the name of a business entity, 40800SEGC, LLC, at Bank of America. (*Id.*) Victim-3 took exception to the check because Victim-3 was "the sole authorized signer" on that bank account, as well as the "sole manager and sole authorized signer" for the LLC, and Victim-3 had not authorized the issuance of the check. (*Id.* at 19-20, 23.)

Victim-3's exclusive authority over the bank account was corroborated by Government's Exhibit 1A, the Bank of America signature card for the account in question, which Agent Smith obtained from the bank through a grand jury subpoena. (*Id.* at 20.)[1] That signature card indicates that it was created on March 28, 2015, and listed only Victim-3 as the LLC's "member" and "managing member." It bears only Victim-3's signature, despite lines for up to four other authorized signers. (Gov't Ex. 1A at 1.)

Government's Exhibit 2 similarly established Victim-3's legal authority over 40800SEGC, LLC, the business entity in whose name the subject bank account was held. Agent Smith testified that Government's Exhibit 2 comprised "the Oregon Secretary of State records associated with 40800SEGC, LLC." (*Id.* at 22.) Those records list only Victim-3 as a member or manager of that LLC from 2015 until the very date of the hearing. It was not until July 7, 2022, that the Secretary of State's records reflected an apparently recent filing claiming that the LLC's responsible member was the "Alfred Nevis Revocable Living Trust." (Gov't Ex. 3.) Victim-3 was "surprised" by that filing and did not authorize it. (Evid. Hr'g Tr. 25.)

---

[1] Government Exhibit 1A was also admitted without objection. (Evid. Hr'g Tr. 21.)

Agent Smith further testified that Victim-3 "was not upset about [the misuse of] the money" conveyed by the check in question, because it "was associated with the sale of [defendant's] residential property." (*Id.* at 27.) But Victim-3 "was upset and felt that he was wronged—that his name was again used to conduct financial transactions that he did not authorize." (*Id.*)

Agent Smith's testimony also provided ample grounds to conclude that Victim-3's signature on the check itself was forged. Specifically, Agent Smith compared the signatures on the check and the Bank of America signature card and concluded that they were inconsistent. (*Id.* at 21.) He further related Victim-3's own report that Victim-3 "didn't believe it was his signature on that check" (*id.* at 31), though "[h]e did not know whether he had signed it" (*id.* at 26).

The uncertainty about the origin of the signature stemmed from the unusual business relationship defendant had previously cultivated with Victim-3. The two men had been "business partners [in] real estate transactions," with Victim-3 retaining sole legal control over their shared enterprise, 40800SEGC, LLC, and its bank account, while defendant apparently managed its "day-to-day operations." (*Id.* at 26, 32-33.) To facilitate those operations, Victim-3 had repeatedly sent "20 to 30" signed, blank checks to defendant's former bookkeeper, with the last batch having been sent, according to Victim-3, "'about a year ago.'" (*Id.* at 33.)

Defendant called Victim-1 (the former bookkeeper), who confirmed that Victim-3 was the authorized signer on the bank account in question and had sent signed, blank checks to her "[b]y FedEx." (*Id.* at 52.) She did not have "unsigned checks from 40800SEGC, LLC, in the office," but Victim-1 stopped working for defendant on December 1, 2021—six months before

the date on the check in question. (*Id.* at 52-53.) She had "no idea" whether defendant "might have signed a check . . . in [Victim-3's] absence." (*Id.* at 53.)

## III. The Evidence Compels Revocation of Defendant's Release

### *a. Standard for Revocation*

The Bail Reform Act provides that "[t]he judicial officer *shall* enter an order of revocation and detention if, after a hearing, the judicial officer (1) . . . finds that there is . . . probable cause to believe that the person has committed a Federal, State, or local crime while on release . . . and (2) finds that . . . there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b) (emphasis added). Where the Court finds probable cause to believe that the defendant has committed a new crime while on release, "a rebuttable presumption arises that *no* condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id.* (emphasis added).

### *b. The evidence establishes defendant committed multiple felony offenses on release*

Defendant's payment of a $50,000 retainer by means of a check purportedly drawn on the bank account of 40800SEGC, LLC, and purportedly signed by Victim-3—but without Victim-3's knowledge or authorization—constituted a felony violation of both state and federal law. First, it constituted identity theft in violation of Or. Rev. Stat. § 165.800. That statute makes it a Class-C felony for a "person, with the intent to deceive . . . , [to] transfer[ or] utter[] . . . the personal identification of another person." Or. Rev. Stat. § 165.800(1). For purposes of this provision, the term "personal identification" is defined to include "any written document . . . that . . . provide[s] information concerning . . . [t]he identifying number of a person's depository

account at a 'financial institution' [or a] person's signature or a copy of a person's signature." *Id.* § 165.800(b)(H)-(I). The term "another person" can refer to a "limited liability company" as well as an "individual." *Id.* § 165.800(a).

The evidence adduced at the hearing provides more than probable cause to believe that defendant's conduct satisfied each of the three elements of this offense. The *actus reus* of the crime is the "transfer" or "utter[ing]" of another person's "personal identification." Here, defendant transferred and uttered to his defense counsel's firm in Portland[2] a check bearing both a disputed facsimile of Victim-3's signature *and* the account number of an LLC over which Victim-3 was "the sole person responsible" at the time. (Evid. Hrg. Tr. 37.) *See Oregon v. Medina*, 357 Or. 254, 266 (2015) (defining "utter" as used in identity theft statute to mirror definition in Or. Rev. Stat. § 165.002(7) (defining "utter" as to "transfer or tender a written instrument")). Defendant did so without Victim-3's knowledge or permission, causing Victim-3 to feel personally "wronged." (Evid. Hr'g Tr. 27.)

Defendant also acted plainly with "the intent to deceive." Specifically, he must have meant to convey both to his defense counsel's law firm and Bank of America that the check was duly signed and authorized by Victim-3, the only person legally able to authorize that draft on the 40800SEGC, LLC, account. Defendant's purported payment of a retainer would have been ineffective otherwise. *See Oregon v. Bivens*, 83 P.3d 379, 383 (Or. Ct. App. 2004) (noting "state may rely on . . . reasonable inferences flowing from th[e] evidence").

---

[2] The check is made payable to Levi Merrithew Horst PC, whose website lists only one address at 610 S.W. Alder Street in Portland, Oregon.

Defendant's counsel suggested defendant may have been authorized to issue the check without Victim-3's consent under a purported "Operating Agreement" for 40800SEGC, LLC, which defendant moved to admit as Defense Exhibit 1. (Evid. Hr'g Tr. 38.) The government renews its objection to admission or consideration of that unauthenticated document. Even if the Court were to consider it, however, the purported operating agreement would provide no defense to a charge of identity theft stemming from defendant's conduct. Specifically, that document provides that "[u]nless greater or other authorization is required pursuant to this Agreement or under the Oregon Limited Liability Company Act for the Company to engage in an activity or transaction, *all activities must be approved by the Members, to constitute the act of the Company or to bind the Company*." (Def. Ex. 1 ¶ 4.1(B) (emphasis added).) The same document purports to identify Victim-3 and defendant as the only members of the LLC. Accordingly—and because no other provision of the agreement or the relevant act[3] provides otherwise—defendant's transfer and uttering of Victim-3's purported signature and the company's account number could not represent a valid act of the LLC without Victim-3's approval.

Defendant's negotiation of the $50,000 check with Victim-3's purported signature but neither his knowledge nor his consent also constituted bank fraud in violation of 18 U.S.C. § 1344(2). As the Ninth Circuit has explained, "[a]ll th[at] statute facially seems to require in a case involving property in the custody or control of a bank"—here, the cash to be disbursed by Bank of America on the draft—"is that there be an attempt to obtain such property from the bank by deceptive means." *United States v. McNeil*, 320 F.3d 1034, 1037 (9th Cir. 2003). Uttering a

---

[3] *See* Or. Rev. Stat. § 63.130(1)

forged or unauthorized check plainly constitutes such a criminal scheme. *See, e.g.*, *Loughrin v. United States*, 573 U.S. 351, 364 (2014) (holding that "the forged or altered check—i.e., the false statement—serves in the ordinary course as the means . . . of obtaining bank property" in violation of the statute).[4]

*c. Defendant's persistent criminal behavior compels revocation*

Because defendant's misconduct constituted felony offenses under both state and federal law, the Court must presume that "no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). This presumption is reinforced by three additional considerations.

First, defendant admits he caused repeated contacts with one of his alleged victims in violation of his conditions of release but failed to report them. Even crediting defendant's claim that the contacts were accidental, his failure to disclose or acknowledge them to his supervising officer and this Court (until the date of his revocation hearing) indicates that defendant does not regard his conditions of release with sufficient gravity. Second, defendant's misuse of Victim-3's name and apparent efforts to hijack the registration of 40800SEGC, LLC, with Oregon's Secretary of State indicate that defendant is continuing to harass a second victim of the identity-theft scheme on which he is awaiting trial. Finally, as USPTS Officer Peru has emphasized, defendant's misuse of the LLC's account reveals that defendant has continuing access to

---

[4] The federal bank fraud statute also requires that the bank at issue be a "financial institution," to wit, an "insured depository institution," 18 U.S.C. § 20(1), and Bank of America is insured by the FDIC. *See* Federal Deposit Ins. Corp., Details and Financials - Institution Directory (July 15, 2022) https://www7.fdic.gov/idasp/confirmation_outside.asp?inCert1=3510#.

substantial funds in undisclosed financial accounts bearing no legal or traceable connection to him. Such circumstances seriously exacerbate the risk defendant's nonappearance.

## IV. CONCLUSION

For the foregoing reasons, the government urges the Court to revoke defendant's release and to order defendant detained pending trial.

Dated: July 15, 2022

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*Ryan Wesley Bounds*
RYAN W. BOUNDS, OSB #000129
Assistant United States Attorney