**Ethan Levi**, OSB No. 994255
Email: ethan@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Attorney for Defendant**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>Plaintiffs,<br><br>vs.<br><br>**ALFRED NEVIS**,<br><br>Defendant. | Case No. 3:22-cr-00183-IM-1<br><br>**DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL RELEASE VIOLATION** |

Introduction

Mr. Nevis did not commit any crime when he drafted and sent a pre-signed check to counsel from a bank account, owned by *his* company, containing approximately $500,000 of his own money. The government did not present a preponderance of evidence that, 1) Mr. Nevis forged a signature, 2) that he intended to defraud or deceive any person or entity, or 3) that the money he paid was anyone's but his own to use.

Standard of Proof Release Violation

A court may only find a release violation for a new crime if it finds "probable cause" that the accused committed a new crime while released. If the court so finds, there is a rebuttable

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL
RELEASE VIOLATION - 1
(Case No. 3:22-cr-00183-IM-1)

**Levi Merrithew Horst PC**
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

presumption that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.

Despite such violation, "If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person of that community, and the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly." 18 U.S.C. §3148(b)(2)(B).

<u>Personal Characteristics</u>

Mr. Nevis is 52 years old. Before this case, he has never been arrested. He is a real estate investor, builder, developer, and farmer. Mr. Nevis has four children, one of whom is 10 years old. Mr. Nevis has deep family roots in California with his mother and sister living in the Yuba City area and with a girlfriend, Meygan, who herself is a small business owner who owns and operates several restaurants. Mr. Nevis surrendered his passport to Pretrial Services, is in good contact with Counsel and traveled to Oregon to appear in person at his last hearing, held July 7, 2022.

<u>Evidence At Hearing</u>

At the release violation hearing on July 7, 2022, this Court heard opening statements and testimony from three witnesses, Agent Andrew Smith, Sandy Pipkin, and Mr. Nevis.

Agent Smith testified largely about hearsay statements of Zion Jerge who was unsworn and unavailable for cross-examination. At the conclusion of his testimony, the court learned that Zion Jerge was the banking member for the company and lived several hundred miles distant from Mr. Nevis, who ran the company's day-to-day operations. (Dkt. 23, P. 32-33, hereinafter "Evid. Hr'g Tr."). In the regular course of business, Mr. Jerge would periodically send batches of blank, unsigned checks to Mr. Nevis who worked at the business's main office and Mr. Nevis would use those checks as needed (*Id*.). Though he had this pattern of sending pre-signed checks,

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL RELEASE VIOLATION - 2
(Case No. 3:22-cr-00183-IM-1)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Mr. Jerge told Agent Smith he hadn't sent a batch of signed checks to Mr. Nevis for approximately a year. We did not hear how many checks the company sent each month or year, or if the number of checks sent varied, or even how often he would send these batches of checks. (*Id*. at 33). As to his signature on the check, Agent Smith testified that Mr. Jerge "did not know whether he had signed" the check. (*Id*. at 26). Although the government argues that Mr. Jerge did not sign the check, the most Mr. Jerge was able to say was that he didn't "believe" it was his signature on the check. (*Id*. at 31). Through Agent Smith, Mr. Jerge conceded that, "[he] was not upset about the money itself because he wasn't claiming the money to be his own and he was not claiming that he was - - that the funds were stolen from him directly." (*Id.* at 26-27). To bolster its case that Mr. Nevis forged Mr. Jerge's signature, Agent Smith offered his own non-expert comparison of the signature on the check with the signature on the bank's own signature card. (*Id*. at 21). Agent Smith concluded that the signatures "were not consistent." (*Id*. at 22). However, Agent Smith was not qualified as a handwriting expert; and though he testified he had compared the signature on the check-at-issue to other checks Mr. Jerge signed, the prosecutor only asked Agent Smith to compare the single signature on the check-at-issue to the single signature on the bank's signature card, not to the other pre-signed checks. (*Id*. at 21). Furthermore, the Government did not offer any other checks with Mr. Jerge's signature on them as comparators and Agent Smith did not testify about how much Mr. Jerge's signature varied from check to check – especially since he signs large batches of checks at a time.

Ms. Pipkin corroborated that Mr. Jerge sent batches of signed checks to Mr. Nevis to use as needed and that Mr. Nevis had final authority when a pre-signed check was used. She testified that she worked with Mr. Nevis as a bookkeeper at his Arroyo Grande office until December of 2021. (Evid. Hr'g. Tr. P. 49-50). Notably, she testified that the company kept no unsigned blank checks at the main office and that the company relied on Mr. Jerge to order the checks and then send batches of pre-signed checks to Mr. Nevis. (*Id*. at 51-52). She also testified that whenever

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL RELEASE VIOLATION - 3
(Case No. 3:22-cr-00183-IM-1)

Levi Merrithew Horst PC
610 SW Alder St. Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

she paid a bill, she would take a pre-signed check, type payment information onto it, present it to Mr. Nevis for approval then send the check for payment. (*Id*. at 51).

Finally, the defense offered Defendant's Exhibit #1, a copy of the company's operating agreement showing that Mr. Nevis was a 100% capitol contributor to the company and one of two members.

What the Government did not present and either knew or should have known at the time it made this allegation are details from Zion Jerge's hours-long November 2021 recorded interview with Agent Smith. In that interview, Mr. Jerge told Agent Smith that he was the banking member for many companies with Mr. Nevis including the company that issued the check in this case. (Exhibit 1, 15:12-18:00). He told Agent Smith that he was merely the banking guy but that Mr. Nevis controlled the day-to-day operations of every LLC they worked together on, including providing the operating agreements, the articles of incorporation, and registering with the secretaries of state. (*Id*.) He also said that whenever he opened a bank account for any company with Mr. Nevis, he provided Mr. Nevis with all the password and online access information so that Mr. Nevis could manipulate the funds in the account from Arroyo Grande. (*Id*. 16:45) He told Agent Smith that he also gave Mr. Nevis debit cards so he could access account funds. (*Id*. at 19:05). He told Agent Smith that he regularly sent batches of pre-signed checks to Mr. Nevis – 100 at a time. (*Id* at 40:46). Mr. Jerge said that Mr. Nevis would tell Mr. Jerge, "Hey I need checks, break your wrist." (*Id*. at 41:00). He told Agent Smith that Mr. Nevis did business with those checks anyway he wanted to and without consultation with him. (*Id*. at 24:21, 40:46 – 42:00). "I gave all the trust to Al." (*Id*. at 37:30, 41:36). He told Agent Smith several times throughout the interview that Mr. Nevis was the money guy, the idea guy, and that Mr. Nevis conducted the operations of the company the way he wanted to. (*Id*.) Mr. Jerge told Agent Smith, that for this work, Mr. Nevis paid him $4,000 a month. (*Id*. at 38:18 - 38:50). It is also clear through this interview that Mr. Jerge was an initial target of the Government's

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL
RELEASE VIOLATION - 4
(Case No. 3:22-cr-00183-IM-1)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

investigation, that he had decided to cooperate with the Government and that he was instructed to keep communicating with Mr. Nevis as if all was normal. (*See Id*. at 28:00) When Zion Jerge called the police and complained about the $50,000 check with his signature on it, it is easy to infer that he was worried that this action may be imputed to him and that it may interfere with any cooperation agreement if the Government saw that he was helping Mr. Nevis. It is natural to infer that he contacted Agent Smith and disclaimed his signature to make sure to keep his cooperation agreement alive.

What is disappointing and very clear after reviewing this recorded interview with Mr. Jerge, is that the government did not present a complete picture of the facts to this Court at the July 7, 2022, evidentiary hearing. The government argued that Mr. Nevis had no ownership in the company. The government argued in opening, " . . . but it is quite conspicuous that this account that is not in the defendant's name, that is not in any corporation or a company that the defendant controls, came from, you know . . . [an account] under the custody and control and in the name of a victim of the scheme alleged in the indictment." (Evid. Hr'g Tr. P. 14). Furthermore, the government offered exhibits ostensibly standing for this proposition i.e., documents from the Secretary of State for the company that only show Mr. Jerge's name. At the time the government made this statement and offered the exhibits, it *knew* or *should have known* that Mr. Nevis was the principal in this business, that Mr. Nevis conducted the day-to-day operations of the business, that Mr. Nevis paid Mr. Jerge $4,000 a month to do banking, and that Mr. Jerge sent batches of pre-signed checks to do that business.

Argument

1. The Government's Burden

To prevail in this hearing, the Government must prove that probable cause supports that Mr. Nevis committed a federal, state, or local crime. The Government has alleged that Mr. Nevis committed the Oregon State crime of Identity Theft, and Federal Bank Fraud. "Probable cause"

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL RELEASE VIOLATION - 5
(Case No. 3:22-cr-00183-IM-1)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

exists when the magistrate is satisfied that evidence supports probable cause of guilt of a particular offense and that the accused committed that offense. *Byrnes v. United States*, 327 F.2d 825 (9th Cir. 1964). Evidence supports neither because the bulk of the evidence supports that Mr. Nevis did not sign the check at issue *and* that Mr. Nevis had no intent to deceive or defraud any person because he was entitled to use the company money, as needed.

2. <u>Mr. Nevis Did Not Forge Mr. Jerge's Signature</u>.

The Government's theory is that Mr. Nevis forged Mr. Jerge's signature on a check. The evidence in this regard favors Mr. Nevis. Mr. Nevis and Mr. Jerge had a unique business relationship. Mr. Nevis ran the day-to-day operation of the company 300 or so miles distant from Mr. Jerge who did the banking. Mr. Jerge would sign large batches of blank checks and send them to Mr. Nevis who would use them to pay for things. Sandra Pipkin verified this custom. She also testified the company kept no blank unsigned checks at the office and needed to go through Mr. Jerge, the banking member to get them. Mr. Jerge did not testify, but his unsworn statements were offered through Agent Smith. Agent Smith testified that Mr. Jerge did not know whether the signature on the check at issue was his signature, only that he believed it was not. This uncertainty does not rise to the level of probable cause that Mr. Nevis forged Mr. Jerge's signature. Coupled with the evidence of their business relationship, it is more likely that Mr. Jerge did sign the check and sent it in a batch of checks to Mr. Nevis to use as needed.

3. <u>Mr. Nevis Did Not Act With an Intent to Deceive or Defraud</u>.

Not only must the state prove that Mr. Nevis forged the signature, under state and federal law, it must also prove that in forging his signature, that Mr. Nevis intended to "deceive" or "defraud" someone or something.

To prove Oregon State Identity Theft, the State of Oregon must prove that Mr. Nevis intended to "deceive" or "defraud" someone. ORS 165.800. Under Oregon Law, "defraud" and "deceive" means to do more than just to trick or fool someone. Under Oregon Law "defraud"

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL RELEASE VIOLATION - 6
(Case No. 3:22-cr-00183-IM-1)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

means "to cause injury to another's legal rights or interests." *State v. Alvarez-Amador*, 235 Or app 402 (2010). Under Oregon Law "deceive" means to attempt to obtain a benefit to which the deceiver is not lawfully entitled." *State v. Porter*, 198 Or App 274 (2005). Mr. Nevis did neither. In this case, there is an absolute absence of any financial injury, any nefarious financial motive, or any intent to interfere with Mr. Jerge's or the bank's legal or financial rights. Mr. Nevis was a 100% capitol contributor and member of the company that issued the check and Mr. Jerge was a 0% capitol contributor to the company. As such, Mr. Nevis was entitled to authorize and act on behalf of the company and the money was exclusively his. Mr. Jerge conceded as much, indicating that he was "not upset about the money," because it was associated with the sale of Mr. Nevis's house. The Government also conceded that the money in the company account was not fruit of the criminal conduct alleged in the indictment. (Evid Hr'g Tr. P. 14). Second, the evidence supports that Mr. Nevis and Mr. Jerge had a long course of conduct in which Mr. Nevis ran the day-to-day operations of the company with pre-signed, blank checks that Mr. Jerge sent him periodically. Mr. Nevis was entitled to use the money as needed. There is no victim who has been deceived or defrauded, as such Mr. Nevis cannot be guilty of Oregon State Identity Theft.

Bank Fraud also requires an intent to defraud and deceive. The government has asserted that to prove Bank Fraud it need not prove that Mr. Nevis tried to steal money just that he tried to deceive the bank even if nobody lost any money by his deception. For this proposition, the government cited *United States v. McNeil*. In *McNeil,* the defendant stole person's identity, for the purposes of obtaining a fraudulent tax refund. *United States v. McNeil*, 320 F.3d 1034, 1035 (2003). To do this, the defendant opened a bank account using the information of Ian Doe without that person's permission. *Id*. at 1036. Later, the defendant applied for a tax refund in Ian Doe's name and directed the IRS to deposit the refund in the previously opened bank account. *Id*. The defendant was convicted of Bank Fraud after a jury trial and appealed his conviction arguing that he did not have the requisite "intent to defraud" because his furnishing false information to

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL
RELEASE VIOLATION - 7
(Case No. 3:22-cr-00183-IM-1)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

the bank did not make the bank a victim of any financial loss as required by the statute. *Id*. 1036-37. The Court of Appeals affirmed the defendant's conviction. *Id*. at 1040.

The government argues that bank fraud only requires mere deception no matter if the bank – or anyone else -- suffered any fraudulent loss. To support this argument the government quoted one sentence of the Court of Appeals opinion in its motion:

> "[a]ll th[at] statute facially seems to require in a case involving property in the custody or control of a bank" – here, the cash to be disbursed by Bank of America on the draft – "is that there be an attempt to obtain such property from the bank by deceptive means."

(ECF #25, P. 8).

The government did not quote the following opinion after this sentence:

> "[h]owever, we need not address whether § 1344(2) reaches cases in which no deception actually is aimed at the bank to obtain property. *See United States v. Thomas*, 315 F.3d 190 (3d Cir.2002), Here, quite plainly, McNeil engaged in a course of deception toward the bank in order for the IRS refund to be deposited in the "Doe" account. *McNeil*, 320 F.3d 1034, 1037.

*McNeil*, 320 F.3d at 1037 (2003).

Contrary to the government's argument, the *McNeil* court did not hold that mere deception *without* fraudulently obtaining property was enough for a conviction for bank fraud. The court simply reasoned that the statute "seemed" to only require mere deception. The court then went on and reasoned that it need not decide that question because,

> we have no difficulty concluding that a reasonable jury could have acted with the specific intent necessary under § 1344(2). He used fake identification to open a bank account in Doe's name and misrepresented himself as Doe to the bank in doing so. By filing a false income tax return, he induced the IRS to deposit a refund in the "Doe" account. And, apparently, as a trial run, he had attempted to transfer money from the "Doe" account to an account in his name before the refund was deposited."

*Id*. at 1039-40.

This case is nothing like *McNeil*, as Mr. Nevis was legally entitled to do what he wanted with the funds in the company account. It is uncontested that Mr. Nevis earned the money in the company account by selling his personal residence. It is clear that their business arrangement

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL RELEASE VIOLATION - 8
(Case No. 3:22-cr-00183-IM-1)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

was such that Mr. Nevis paid bills as needed with Mr. Jerge's presigned checks. As such, Mr. Jerge is not a victim, the bank is not a victim, and the government is not a victim. For this reason, probable cause does not support a conviction for Federal Bank Fraud.

## Conclusion

This Court should not find that Mr. Nevis violated his release agreement. The evidence supports that Mr. Nevis did not forge Mr. Jerge's signature, Mr. Nevis was a member and 100% capitol contributor of the company, and he had every right to use the funds in the account as he saw fit because he was a 100% capitol contributor to the company, the money came from the sale of his residence, and no person or entity was deceived or defrauded.

**DATED** this 19th day of July, 2022.

By: s/ Ethan Levi

**Ethan Levi**, OSB No. 994255
Attorney for Defendant

DEFENDANT'S ARGUMENT RE: ALLEGED CONDITIONAL RELEASE VIOLATION - 9
(Case No. 3:22-cr-00183-IM-1)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

# Exhibit 1

**<span style="color:red">Filed Under Seal</span>**

*Defendant's Argument re: Alleged Conditional Release Violation*

**Audio Placeholder**